**THIS ORDER IS SIGNED AND ENTERED.**

**Dated: November 30, 2015**

_____
**Hon. Robert D. Martin**
**United States Bankruptcy Judge**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In the Matter of:

Home Casual LLC,                                                          (Chapter 7)

        Debtor.                                              Case No. 13-11475

ROBERT T. KASDORF, TRUSTEE, TRUSTEE OF HOME CASUAL, LLC,

        Plaintiff,
   v.                                                                    Adv. No. 15-00043

HOME CASUAL ENTERPRISE, LTD.,
ZHEJIANG HEMEI LEISURE PRODUCTS CO., LTD.,
HANGZHOU VOLLY GARDEN FURNITURE CO., LTD.,
and HANGZHOU KING-REX FURNITURE INDUSTRY CO., LTD.,

        Defendants

MEMORANDUM DECISION

Home Casual LLC filed a chapter 11 case on March 29, 2013, which was converted to a

chapter 7 on April 23, 2013. On March 26, 2015, the Chapter 7 trustee commenced this

adversary proceeding against Home Casual Enterprise, Ltd. (HCEL), Zhejiang Hemei Leisure

Products Co., Ltd., Hangzhou Volly Garden Furniture Co., Ltd., and Hangzhou King-Rex

Furniture Industry Co., Ltd. (defendants) to avoid transfers, compel turnover, and disallow

1

claims. Defendants filed a motion for judgment on the pleadings which was denied. A trial was

held on August 14, 2015, and the matter was taken under advisement.

The following facts were proved or not contested. Defendants, HCEL, Zhejiang Hemei

Leisure Products Co., Ltd., Hangzhou Volly Garden Furniture Co., Ltd., and Hangzhou

King-Rex Furniture Industry Co., Ltd., contracted with debtor, Home Casual LLC to supply

outdoor furniture. In this, HCEL facilitated the debtor's relationship with the rest of the

defendants which have been known throughout these proceeding as "the Chinese factories."

In September of 2011, while in default to the defendants, debtor assigned a substantial

number of its purchase orders, in excess of $79 million, to HCEL. This effort failed to satisfy and

defendants filed a diversity action in federal court to collect from the debtor. On November 19,

2012, they obtained a judgment in the amount of $10,813,493.00. A transcript of that judgment

was filed in Wisconsin with the Dane County Circuit Court. Defendants then filed a

non-earnings garnishment action against Brian Sanderson, seeking partial satisfaction of the

November 19, 2012 judgment.

On December 28, 2012, Sanderson accepted service of defendants' garnishment

complaint. In an order dated March 19, 2013, the Dane County Circuit Court granted summary

judgment on the garnishment action in favor of the defendants providing: "[a]ny and all property

in possession or control of Brian Sanderson in which Home Casual, LLC has an interest in, to the

extent of such interest, and all amount due under the promissory note (as that term is defined in

Plaintiffs' Motion for Summary Judgment) shall be paid to the Plaintiffs/Judgment Creditors c/o

von Briesen & Roper s.c…" In response, Sanderson paid $250,000.00 to HCEL on April 1,

2013.[1] For reasons not explained at trial, HCEL subsequently returned the payment to Brian

---

[1] This date is established by the answer to the trustee's Interrogatory No. 2 of Joanne Tam on behalf of HCEL. The admissibility of that answer in evidence was contested by the defendants, but is governed by Federal Rule of

Sanderson. The $250,000 payment by Sanderson was not credited as payment toward the judgment against the debtor.

The debtor was insolvent during the 90 day period prior to bankruptcy. On March 29, 2013, the debtor filed this case, and on schedule B debtor listed a "Chinatrust Bank account managed by Home Casual Enterprises, LTD," with a balance of $237,000. HCEL had previously distributed funds to the factories from this account. The distribution facilitated debtor's international purchases, but was not based on any written agreement. Prior to bankruptcy, the debtor had treated funds in the account as undistributed payments due or expected to become due to the Chinese factories. It appears that the practice of the parties was to let HCEL determine which factories would be paid, after the debtor sent funds for deposit. But, the last evidence in the record of a positive balance in the account dated to 18 months before bankruptcy. There is nothing to support the notion that this amount stayed in the account until the filing date.

*I.      Sanderson Garnishment*

An otherwise preferential transfer is avoidable if received within 90 days before the bankruptcy case is filed. 11 U.S.C. § 547 (2012). The trustee contends that defendants received such a transfer in the form of defendants' garnishment of the Brian Sanderson debt. On December 28, 2012, 91 days before bankruptcy, Sanderson was served with the defendants' garnishment summons and complaint. On March 19, 2013, a summary judgment on that complaint was entered for defendants. Defendants claim that because a lien arose when Brian Sanderson accepted service of the garnishment complaint on December 28, 2012, the transfer was outside of the 90 day period prior to March 29, 2013.

---

Evidence (FRE) 801(d)(2). Thus, absent any objection other than a claim that the answer is hearsay, the proffered answer to interrogatory must be received in evidence.

Wis. Stat. § 812.18(1) provides:

> From the time of service upon the garnishee, the garnishee shall be
> liable to the creditor for the property then in the garnishee's
> possession or under his or her control belonging to the debtor or in
> which the debtor is interested to the extent of his or her right or
> interest therein and for all the garnishee's debts due or to become
> due to the debtor, except such as are exempt from execution, or are
> required by a court to be paid by the debtor as restitution under s.
> 973.20, but not in excess of the amount of the creditors' claim.

The word "lien" does not appear in this statute. Further, Wisconsin case law has distinguished

the acceptance of service of a garnishment action, an equitable lien, from the securing of a

judgment on a garnishment action, an actual lien. *See Bank of Commerce v. Elliott*, 85 N.W. 417,

661 (Wis. 1901). In this case, the Wisconsin common law cleavage between equitable and actual

liens is important, as the latter qualifies as a lien under 11 U.S.C. § 101(37), and thus a transfer

under 11 U.S.C. § 101(54)(A), while the former does not.

In *Bank of Commerce,* the Wisconsin Supreme Court discussed the distinction in

Wisconsin law between equitable and actual liens. Specifically, the court observed:

> It is clear that under our statutes a garnishment does not create a
> lien, strictly so called, on the property of the principal debtor in the
> hands of the garnishee. The interest obtained is of an inchoate
> character. It does not reach the property so as to constitute an
> actual interest therein, though it is true that such interest has been
> commonly called, by this and other courts, an equitable lien. The
> plaintiff cannot follow the property on the strength of any legal or
> even equitable interest therein, from the mere fact of the service of
> the garnishee process, but can control the property by seasonably
> acting to that end and thereby put the court in possession of the res.

*Bank of Commerce*, 85 N.W. at 420. In *Bank of Commerce* the court described the equitable lien

created by the serving of a garnishment as being of "so shadowy a character that it does not

attach to any particular thing, as does an equitable interest as a mortgage, but only enables the

court to act upon the party holding the res." *Id.* at 421. Thus, *Bank of Commerce* holds that a

creditor obtains an equitable lien upon service which is not an actual interest until the creditor

4

obtains a judgment which would allow it to "follow the property on the strength of legal

interest." *Id.* at 420.

The term "lien" in the Bankruptcy Code is defined as a "charge against or interest in

property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37)

(2012). An equitable lien does not fit this definition. So the lien which constitutes a transfer for

preference analysis did not arise until entry of the garnishment judgment on March 19, 2013.

That transfer occurred during the 90 day preference period and is voidable by trustee.

    II.     *Sanderson § 549 Post-Petition Transfer*

The $250,000 payment by Brian Sanderson on April 1, 2013, was not authorized by the

Bankruptcy Code or court. Defendants contend that by then the debtor no longer had an interest

in the garnished funds nor the Sanderson promissory note. So, they argue no authorization was

required. But, that is not correct. The debtor maintained an interest in the Sanderson promissory

note even after entry of the garnishment judgment and still did so at the time of Sanderson's

payment on April 1, 2013. It was clearly an asset of the bankruptcy estate and a partial payment

of the obligation it represented was a transfer of estate property. Accordingly, the $250,000

Sanderson payment is voidable under 11 U.S.C. § 549. *See* 11 U.S.C. § 549 (2012). Further,

because the payment was made to the defendants it can be recovered from them pursuant to 11

U.S.C. § 550.

Under § 550, "to the extent that a transfer is avoided under section . . . 549 . . . the trustee

may recover, for the benefit of the estate, the property transferred . . . from – (1) the initial

transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C.

§ 550 (2012). The unexplained "return" of funds to Sanderson does not change this analysis.

Accordingly, because the $250,000 Sanderson payment is voidable under § 549 the trustee may

recover the transfer from the defendants under § 550.

III.   *Turnover*

The trustee seeks turnover of the "Chinatrust Bank Account" from HCEL under 11 U.S.C. § 543. Without having to address the vagaries of custodial accounts, it suffices to note that there is no proof that there were funds in the account on the date of the bankruptcy which would be subject to turnover. The last record of the account was dated September 9, 2011. It would defy common sense to infer that sum or any other was still on deposit 18 months later. The debtor's bankruptcy filing was on March 29, 2013. There is no written agreement concerning the nature or use of the account. And, there is no persuasive evidence of how the account was used or treated by the parties that would support a characterization of HCEL as a custodian. So there is no basis on which to compel an accounting.

IV.   *Defendants' Claims*

Trustee argues that, pursuant to 11 U.S.C. § 502(d), as defendants were transferees of property recoverable under 11 U.S.C. §§ 543, 547, 549, and 550, all scheduled claims or filed claims of each defendant against the debtor should be disallowed, or payment on such claims delayed, until defendants pay the amounts or turn over the property to trustee.

Looking to U.S.C. § 502(d), it provides that:

Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502 (2012).

The transfer of debtor's interest in the Sanderson promissory note is a voidable preference under 11 U.S.C. § 547. Accordingly, defendants' claims should be disallowed until such time as defendants have paid the amount of the transferred interest in the Sanderson

promissory note, or turned over debtor's interest in the Sanderson promissory note, with interest, to trustee. Further, given the April 1, 2013, date of transfer of the $250,000 Sanderson payment, this payment is a voidable post-petition transfer under 11 U.S.C. § 549. Thus, as to trustee's second cause of action, defendants' claims should be disallowed until such time as defendants have paid over the amount of the Sanderson payment, with interest, to the trustee. Finally, as to the "Chinatrust Bank Account," HCEL is not subject to a turnover requirement. Therefore, HCEL's claim should not be disallowed or reduced as a result of the alleged existence or characterization of that account.

The trustee is entitled to judgment against the defendants for $250,000.00 with interest as recovery for the April 1, 2013, avoidable transfer. Further, the trustee is entitled to judgment against the defendants for the return of debtor's interest in the Sanderson promissory note. The claims of the defendants are disallowed completely due to their failure to turn over the avoidable transfers they have received. It may be so ordered.

###